## LUFKIN v. REPUBLIC BLDG. & LOAN ASS'N.
### No. 11599.

Court of Civil Appeals of Texas. Dallas.
March 2, 1935.

Rehearing Denied March 30, 1935.

Cecil L. Simpson, of Dallas, for appellant.
Muse & Muse, of Dallas, for appellee.

JONES, Chief Justice.

W. W. Lufkin, appellant, a resident citizen of Eastland county, instituted this suit in a district court of Dallas county, against the Republic Building & Loan Association, seeking to have his investment certificate No. 94–C reinstated by appellee, or, in the alternative, to recover $3,200, the alleged value of said certificate. A general demurrer was sustained, and the suit was dismissed on appellant's refusal to amend. An appeal has been duly perfected to this court, and the following are the material facts as alleged in the petition:

On December 31, 1926, appellant invested $4,000 in appellee and was issued an investment certificate representing the $4,000 investment. In 1930, appellee entered into voluntary liquidation, and in November of said year appellant had received $800 as prorations on his said certificate. At that time, he was approached by C. L. Frazier, a director, vice president, general manager and secretary-treasurer of appellee, and informed by him that appellee had perfected arrangements with the General Bond & Mortgage Company, a corporation, by means of which any investor in appellee might retain an investment by surrendering his certificate to

appellee, and have issued to him a certificate of investment in the Bond & Mortgage Company, and that this method of providing for a continuance of an investment for appellee's shareholders had been approved by the commissioner of insurance.

Appellant believed that Frazier was representing appellee, and in good faith believed that such provision to continue his investment had been made by appellee. As a result of this conference, appellant was issued 1,900 shares of stock in the Bond & Mortgage Company at $1.50 per share, representing $2,850 of the value of his investment, and received a note for the remaining $350. Appellant surrendered for cancellation on the books of appellee his investor's certificate, and same was canceled. It is shown that other investors acted similarly, and received an investment certificate representing shares of stock in the Bond & Mortgage Company.

It is shown that appellee did not authorize the transaction that Frazier had caused appellant to make; that, in fact, Frazier entered into such transaction for himself, and not for appellee, as represented to appellant; that, to consummate the transaction, Frazier adopted the procedure of having certain notes appellee owned transferred to third parties on the indorsement of Quentin D. Corley, appellee's president, and these notes were then transferred to the Bond & Mortgage Company, the transfer of these notes constituting the consideration for the cancellation of appellant's investment certificate in appellee, and of the issuance to him of his stock and his said note in the Bond & Mortgage Company.

When appellee discovered that said notes had been transferred to the Bond & Mortgage Company, it instituted suit in a district court of Dallas county, alleging that such transfers were fraudulently made, and that it had never parted with title to said notes, and had received no consideration therefor. A final judgment was entered in the suit, divesting title out of the Bond & Mortgage Company to all of the notes transferred to it, and vesting title to the notes in appellee. It is further shown that the capital stock of the Bond & Mortgage Company was largely, if not entirely, composed of these illegally transferred notes, and that when the Bond & Mortgage Company was decreed to have no title in them, its capital stock was destroyed and the certificate of investment to appellant and the note made to him became worthless.

At the end of the litigation between appellee and the Bond & Mortgage Company, appellant had nothing of value representing his investment certificate in appellee of the value of $3,200, while appellee had its liability lessened by a like amount. In other words, if the judgment of the lower court should be affirmed, appellee has gained by the fraud of its managing official the sum of $3,200, and appellant, by reason of such fraud, has lost the exact amount that appellee has gained. It is made to appear, therefore, that appellant can be restored to the investment status he occupied prior to Frazier's fraud, without financial loss to appellee.

■■ Appellant did not know of the fraud practiced upon him by Frazier until the judgment in a district court of Dallas county, in the above-described suit instituted by appellee, and he at once instituted this suit. The fraud practiced upon appellant was not the fraud of appellee, but of its most active official. Appellant had the right to assume that, in dealing with such official, he could rely upon the representations made by such official in respect to the plan of liquidation, represented by Frazier as being authorized and legal. If appellee had not been made whole by its judgment in the district court, and had lost the consideration given by Frazier for the cancellation of appellant's certificate, the case would be entirely different. But a court of equity ought not to close its doors, permit appellee to be relieved of the obligation it owed appellant prior to the fraud of its most active official, receive back the consideration illegally paid for the cancellation of appellant's certificate, and offer no relief to a defrauded investor when relief can be granted without financial loss. Rather, we think equity should say to appellee, "You cannot profit to the extent of $3,200 on the fraud of your active official, to the loss of your investor in a like amount." 10 R. C. L. p. 309, § 52, and authorities cited in footnote.

It follows that, in our opinion, a cause of action was stated in the petition as against a general demurrer, and that the case must be reversed and remanded, and it is so ordered.

**Reversed and remanded.**