REPUBLIC BUILDING & LOAN ASSOCIATION V. W. W. LUFKIN.

No. 7199.  Decided February 22, 1939.
Rehearing overruled April 19, 1939.
(124 S. W., 2d Series, 979; 127 S. W., 2d Series, 167.)

*J. C. Muse, Jr.,* of Dallas, for plaintiff in error.

It was error to conclude as a matter of law that while the fraud practiced upon the plaintiff was not the fraud of the defendant, it was the fraud of defendant's most active official,

and that the plaintiff had the right to assume, in dealing with such official, that he could rely upon the representations made by such official in respect to the plan of liquidation, represented by such official as being authorized and legal. It was also error in holding as a matter of law that plaintiff was entitled to a recission of an exchange of stock with said official. Galveston, H. & S. A. Ry. Co. v. American Grocery Co., 122 Texas 1, 36 S. W. (2d) 985; Franco-Texan Land Co. v. McCormick, 85 Texas 416, 23 S. W. 123; Continental Oil Co. v. Baxter, 59 S. W. (2d) 463.

*Cecil L. Simpson,* of Dallas, for defendant in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the District Court of Dallas County, Texas, by W. W. Lufkin against Republic Building & Loan Association to have reinstated on the books of the Association stock certificate thereof No. 94-C, of the withdrawal value of $3200.00, and to have certain prorations paid to him The case was first tried in the 68th District Court of Dallas County, where a general demurrer to Lufkin's petition was sustained, and the cause dismissed. On appeal by Lufkin, the judgment of the District Court was reversed, and the cause remanded for trial upon its merits. Lufkin v. Republic Building & Loan Assn. (Civ. App.), 80 S. W. (2d) 1110. The trial from which this appeal emanated was in the 14th District Court of Dallas County. In this trial, judgment was rendered, generally speaking, for Lufkin. The Association appealed to the Court of Civil Appeals at Dallas, but the case was transferred to the El Paso Court of Civil Appeals in the equalization of the dockets of those several courts. On final hearing in the last-named court, the judgment of the district court was reduced by $85.40, which will be hereinafter explained, and then affirmed. 97 S. W. (2d) 718. The case is in the Supreme Court on writ of error granted on application of the Association.

■ The Republic Building & Loan Association was incorporated as such under the general building and loan association laws of this State. While it was a going concern, it operated under such statutes. In 1930 W. W. Lufkin became an investing stockholder. He purchased a paid-up certificate for the par value of $4,000.00, evidenced by certificate No. 94-c. Of course, Lufkin's rights as holder of the above certificate were fixed by the valid by-laws of the Association, and the general laws of this State.

In 1929 the Association encountered financial difficulties, and went into liquidation under the direction and supervision, and with the approval of the Banking Commissioner of this State. After the Association went into liquidation, its assets were collected, as far as possible, and prorated ratably to its members or stockholders. Lufkin received two of these prorations amounting to $800.00, thus reducing the withdrawal value of his stock, or certificate, to $3200.00.

In 1930 C. L. Frazier, who was then one of the six Directors of this Association, its Vice President, and Secretary-Treasurer, began to buy stock therein from the certificate holders for sums much less than its withdrawal value. The certificates so purchased by Frazier were cancelled on the books of the Association at one hundred cents on the dollar of their withdrawal value, and he, Frazier, took secured notes belonging to the Association of the same aggregate, or equivalent, value as the withdrawal value of the stock cancelled.

Frazier was guilty of fraud in his dealings with this Association in regard to the above matters. This fraud was effected by Frazier representing to Q. D. Corley, President of the Association, that borrowing stockholders were paying off or refinancing their loans, and that the cash was being received for the notes belonging to the Corporation which Frazier was getting in lieu of the stock of the Association cancelled on its books, as above detailed.

As a part of Frazier's general fraudulent scheme, he chartered a concern called General Bond and Mortgage Company, with a capital stock of $10,000.00. The assets, or notes, taken from this Association in consideration of the cancellation of its stock were finally transferred to this new concern, and constituted its entire assets.

Frazier saw and induced Lufkin to transfer to him certificate No. 94-C, supra, with a withdrawal value of $3200.00. In consideration for this stock, Lufkin received 1900 shares of stock in General Bond and Mortgage Company, of the par value of $1.00 per share, and the note of such company for $350.00. After Lufkin had made the above exchange with Frazier, he, Frazier, took the $3200.00 of stock he had gotten from Lufkin, and cancelled same on the books of the Association. At the same time, Frazier had transferred to himself secured notes of the Association for a like amount as the amount of Lufkin's stock so cancelled. The notes which Frazier had gotten from the Association in the manner above detailed were later transferred to General Bond and Mortgage Company. These notes, and others gotten in the same general way

from the Association, constituted all the assets of General Bond and Mortgage Company.

After the above transactions, this Association discovered the wrongs perpetrated on it and its shareholders by Frazier, and brought suit against him, General Bond and Mortgage Company, and certain others not necessary to name to recover back the assets, or notes, held by the last-named company, and which had been abstracted by Frazier, as above detailed. The Association prevailed in that suit, and recovered back all the notes which Frazier had abstracted from it, and thus left General Bond and Mortgage Company without any assets whatever. If we understand this record, the Association recovered back the very notes that Frazier had abstracted in consideration for the cancellation of Lufkin's stock. The trial court, in the instant case, charged Lufkin with the sum of $579.52 expenses which this Association was out in recovering the above notes. Stated in another way, the trial court ordered Lufkin's stock restored on the books of the Association, charged with the above sum as expenses. The undisputed record shows that $664.92 was the true amount the Association was out in making such recovery. The Court of Civil Appeals corrected this error in the sum of $85.40, and after making such correction, affirmed the judgment of the district court.

■ Lufkin contends that since this Association has recovered the notes which it parted with in consideration for the cancellation of his stock, he is entitled to have such stock reinstated on the books of the Association, charged with the sum of $664.92 expenses incurred by the Association in making such recovery. As we understand the opinion of the Court of Civil Appeals, it sustains Lufkin's contention. We think the opinion of the Court of Civil Appeals in this respect is correct. In other words, we think that under the facts of this record, when this Association recovered back the notes it had parted with as consideration for cancelling Lufkin's stock, it, in effect, recovered such notes for Lufkin's benefit, and therefore must so credit him, less its expenses.

■ The Association contends that the facts of this record show that Lufkin, after he knew of the wrong that Frazier had perpetrated against him and this Association, did certain things and committed certain acts which amounted to a ratification of his transaction with Frazier, and Frazier's transaction with the Association. In our opinion, should it be admitted that Lufkin attempted to ratify his transaction with Frazier, and Frazier's transaction with the Association still the situation

here is not altered. This Association successfully prosecuted its suit to recover the very notes that it parted with as consideration for cancelling Lufkin's stock. It will therefore suffer no loss to restore such stock on its books, charged with the expense of such recovery. Lufkin may have attempted to ratify, but this Association did not permit him to do so. In the language of the late Chief Justice Jones of the Dallas Court of Civil Appeals in the opinion on the first appeal of this case: "If appellee had not been made whole by its judgment in the district court, and had lost the consideration given by Frazier for the cancellation of appellant's certificate, the case would be entirely different. But a court of equity ought not to close its doors, permit appellee to be relieved of the obligation it owed appellant prior to the fraud of its most active official, receive back the consideration illegally paid for the cancellation of appellant's certificate, and offer no relief to a defrauded investor when relief can be granted without financial loss. Rather, we think equity should say to appellee, 'You cannot profit to the extent of $3,200 on the fraud of your active official, to the loss of your investor in a like amount.' " 80 S. W. (2d) 1110, 1111.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 22, 1939.

### ON MOTION FOR REHEARING.

The above numbered and entitled cause is before us on motion for rehearing filed by Republic Building & Loan Association.

The Association says that we were in error in our original opinion in stating that W. W. Lufkin became an investing stockholder in 1930. We acknowledge the error. Lufkin became a stockholder about December 31, 1926. The date is immaterial.

The Association says that we were in error in the following statement contained on our original opinion:

"The certificates so purchased by Frazier were cancelled on the books of the Association at one hundred cents on the dollar of their withdrawal value, and he, Frazier, took secured notes belonging to the Association of the same aggregate, or equivalent, value as the withdrawal value of the stock cancelled."

We think the above statement is legally correct. The motion for rehearing, in effect, admits that the stock acquired by Frazier and those acting for and with him was cancelled

on the books of the Association, not in the name of Frazier, "but in the name of some other individual acting with and for him."

The Association says that we were in error in stating in our original opinion that W. W. Frazier chartered General Bond and Mortgage Company. It is immaterial in whose name such concern was actually chartered. It was used and controlled by Frazier and those acting with him for the purpose stated by us in our original opinion.

The Association says that it did not recover back all the assets that Frazier abstracted from it. We did not say that such was the case. The Association recovered back the notes, or notes which we think, in law, represented their equivalent, which it parted with in consideration of the cancellation of Lufkin's stock.

The Association says that we were in error in stating, in effect, that Lufkin's stock was ordered restored on its books charged with $664.92 expenses incurred by the Association in making such recovery. We may have been in error in using the word, "expenses." That is immaterial. The Lufkin stock was ordered restored on the books of the Association charged with $664.92. This was the sum proper and necessary to be so charged in order to save the Association from loss in restoring such Lufkin stock on its books.

The final result of the judgment entered by the Court of Civil Appeals in this case was to restore W. W. Lufkin's stock on the books of this Association, charged with a sufficient sum to save the Association from loss in the Lufkin transaction. It is our opinion that, under the facts and circumstances of this record, such judgment is proper and equitable.

The motion for rehearing filed herein by the Association is in all things overruled.

Opinion delivered April 19, 1939.